**ORIGINAL**

DS134640

3-21CV2738-C

CLERK US DISTRICT COURT
NORTHERN DIST OF TX

2021 NOV -4 AM 10:38

DEPUTY CLERK_____ MS

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS

EMPLOYMENT DISCRIMINATION COMPLAINT FOR PRO SE LITIGANTS IN ACTIONS FILED UNDER 42 U.S.C. § 2000e, et seq., (Title VII of the Civil Rights Act), 42 USC §1981, 42 U.S.C. § 12112, et seq., (Americans with Disabilities Act), 29 U.S.C. § 701, the Rehabilitation Act of 1973 as amended (29 U.S.C. 720 et seq.) Family and Medical Leave Act of 1993 as amended (29 U.S.C. 2601 et seq.), (including prohibition of willful interference, discrimination and retaliation, see section 12:2.11)

# COMPLAINT

Keith V. Otto v. Collin College, Case No.:

**PLAINTIFF REQUESTS A TRIAL BY JURY**.

PARTIES TO THIS COMPLAINT

**Plaintiff**

    Keith V. Otto
    514 Wentworth Drive
    Richardson, (Dallas County)
    Texas 75081
    (214) 636-9996 (Cell)
    kvotto@gmail.com / keithottomba@gmail.com

**Defendant**

    COLLIN COLLEGE
    Floyd W. Nickerson, Chief Human Resources Officer
    Collin Higher Education Center
    3452 Spur 399, 3rd floor
    McKinney, (Collin County)
    Texas 75069
    COLLIN COLLEGE
    c/o Kim Moore, Attorney for Defendant
    Clark Hill
    2600 Dallas Parkway, Suite 600
    Frisco, Texas 75034

II. BASIS FOR JURSIDICTION

This case is brought for discrimination in employment pursuant to: a) Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e - § 2000e-17 (race, African American, color, and national origin) and retaliatory imposition of discipline and retaliatory discharge for filing internal complaint of discrimination against my immediate supervisor; b) 42 USC §1981 hostile environment claim;  c) Americans with Disabilities Act (as amended) of 1990 [A.D.A.], as codified, 42 U.S.C. § 12112 to § 12117, including, but not limited to intentional denial of timely requests for accommodation and retaliation for seeking accountability for the illegal actions of my supervisor, who ordered white co-workers to review my case records, and who did not hold those co-workers accountable for their performance shortcomings and otherwise retaliated against my efforts to obtain fair and appropriate accommodations; d) the Rehabilitation Act of 1973 as amended, (29 U.S.C. 720 et seq.) and retaliation thereunder; and Family and Medical Leave Act of 1993 as amended, (29 U.S.C. 2601 et seq.) (including prohibition of willful interference, discrimination and retaliation, see section 12:2.11) thereunder by my supervisor who, among other acts of misconduct, tried to deprive me of an approved FMLA leave by seeking to terminate my employment during the pendency of that approved leave and e) the Family Medical Leave Act.

The Notice of Right to Sue letter from the Equal Employment Opportunity Commission has been issued under relevant Law.

III. Additional STATEMENT OF CLAIM of Employment Discrimination

A. The discriminatory conduct at issue includes, but is not limited to:  (1) Failure to timely reasonably accommodate disability; (2)Unequal terms and conditions of employment; (3) Retaliation; (4) Other acts including supervisor's false assertions to Collin College's management and human resource staff that the organization which supervised our small business development center required that notes of meetings with clients had to be entered in a database within a certain time frame, supervisor's effort to cover-up a white co-worker's assault on me, that supervisor's effort to terminate my employment during an approved leave under the Family Medical Leave Act, that supervisor's campaign of demanding that white co-workers spy on my database entries in order to report to her any lapse in

data entry, including trivial grammatical mistakes, and that same supervisor's urging her acquaintances to falsely claim that my appropriate guidance to them regarding business formation was not sufficient. My workplace was permeated with discriminatory intimidation, ridicule and insult which adversely altered the conditions of my employment in violation of §1981 and the other statutes recited within.

B. The alleged discriminatory acts occurred throughout my employment, including not approving my initial request for accommodation for well over two years, not until a few months before my wrongful termination, which was fomented by my supervisor's knowing failure to disclose where two social security numbers were embedded in a lengthy document: rather than simply removing those two numbers herself or timely informing me where I could locate them in a lengthy document, she intentionally withheld the information from me and then sought and obtained my termination because she claimed I did not quickly enough remove those numbers: to date, Collin College has not disclosed that my work with the client in that matter yielded his obtaining a multi-million dollar loan and thereby opening a successful medical clinic and medical practice.

C. I am an African American male. I was born in Antigua and Barbuda and moved to the United States when I was 15 years old. On May 13, 2015, Collin College (or 'the College") hired me as a business advisor for its Collin Small Business Development Center ("Collin SBDC" or "Center"). My supervisor was the Center's manager, Ms. Marta Gomez Frey. Supervisor Gomez Frey arbitrarily disciplined me and later terminated me, relying heavily on her falsely claiming that my database entries violated standards mandated by our funding source: Collin SBDC ("the Center") is a subcontractor of the North Texas Small Business Development Center ("NTSBDC"), which provides most of the Center's funding from grants which it receives from the United States ("Federal") and Texas state government.  In late December, 2018, the College upheld Ms. Gomez Frey's termination of my employment.

Supervisor Gomez Frey created a hostile work environment against me and discriminated against me because of my race and disability. She frequently tasked her staff, my co-workers, to monitor my database entries and report any supposed shortcomings to her. She showed continual favoritism toward the white co-workers, sometimes transferring my clients to them, and not

holding them to important standards. Amongst other things, Ms. Gomez Frey ordered those white co-workers to search my database in "Neoserra" to document any instances when I did not enter certain client data within five days of assisting those clients. Neither I nor the other black professional were ever tasked to monitor the white co-workers' databases. Moreover, she overlooked those white co-workers' failure to meet certain performance benchmarks which I routinely satisfied. And she manipulated the promotional requirements and then she preselected and promoted a white business advisor, passing over a subsequently hired very qualified black co-worker.

Supervisor Gomez Frey's office adjoined mine. Despite knowing about my disability, she undermined my productivity by frequently interrupting my work efforts. I tried to remedy this problem and sought appropriate work accommodations. But Ms. Gomez Frey unreasonably opposed my requests for reasonable accommodation and leave, including under the Family Medical Leave Act. After my emergency hospital admission for heart problems, she was ordered to stand down in that effort to stop processing of my FML application in February, 2018.

In late 2017, Ms. Frey tried to cover up a white male business advisor's threatening behavior toward me. All co-workers saw this co-worker screaming and cursing profanities at me in an office meeting: then he jumped up, bolted from our meeting and left work for the day. His unprovoked misconduct was a clear violation of Collin College and Collin SBDC standards which warranted his written discipline. Though it was clearly a reportable event, Ms. Gomez Frey tried to cover up his misconduct by not reporting it. Then she tried to undermine the subsequent investigation of his misconduct by the human resources (HR) generalist assigned to our unit. That HR generalist conducted an independent investigation by interviewing all unit members. Her investigation disclosed Ms. Frey's efforts to cover up the white co-worker's threatening behavior towards me. As a result, that white male co-worker was given step one written discipline over Ms. Frey's objections. But I doubt Ms. Gomez Frey was disciplined for her attempted cover-up.

In 'mid 2018, this same HR generalist discovered Ms. Gomez Frey had lied to her by claiming that the NTSBDC was requiring her to impose a timeliness standards on me concerning typing notes into the Neoserra database. Ms. Frey falsely claimed that those entries had to be made within five days of the actual client contact so she had to discipline me when I did not complete the entries in that time frame. Of course, she did not discipline my white male coworkers when they did not meet supposed mandatory requirements. None of my co-workers were spied on, or placed under this pressure by Ms. Frey. In fact, the NTSBDC leadership told the HR staffer in the spring of 2018 that, in response to my American with Disabilities Act as Amended "ADA accommodation" request, it was appropriate to permit me to enter details of client contact within five work days **in the month following** the month in which I had met with the agency client (the 5 day rule). Ms. Gomez Frey had perennially falsely claimed those entries had to be made within five days of the actual contact.

Shortly after this HR staffer reported Ms. Gomez Frey's misrepresentations, that staffer was abruptly transferred to another campus. So despite how much she had learned about my mistreatment, she was removed from investigating human resources activities in my workplace, the Collin SBCD, Courtyard Campus. The HR generalist who replaced her had no interest in assuring that I would be treated fairly by a supervisor who had been caught lying to the HR department and Collin College leadership in general. My last request for accommodation was made in 'mid March, 2018, immediately following my month long FMLA absence. But it was not approved until August, 2018 (and, even then, it fell short of my request.) I was never given that accommodation. **If I had timely obtained the accommodation, I would have met reasonable performance expectations; this, in turn, would have undermined Ms. Frey's excuse for firing me.** So her most recent obstruction of the ADA accommodation process effectively denied me the accommodation: she delayed my obtaining warranted accommodation for over six months and, then, when it was only approved in part, **she never permitted its implementation**. So when Ms. Gomez Frey recommended my firing in 'mid October, 2018, I had not received the requested accommodation for seven months immediately following my month long FMLA absence. So I was not accommodated for more than half of the rating

period because Ms. Gomez Frey thwarted me, but that did not stop Ms. Gomez Frey from imposing performance standards for a full year to "justify" the unacceptable rating she used to support my termination.

Ms. Gomez Frey imposed a hostile environment on me and fired me because of my disability, my race, African American, and my effort to fairly obtain accommodations. She illegally obstructed the accommodation process. She persistently lied to and manipulated the College's human resource professionals and Collin College management. Ultimately, she succeeded. Ms. Gomez Frey used her "cat's paws" to manipulate higher level Collin College management. I would still be an employee of the Collin SBDC if she had followed NTSBDC guidance. Her abuse could threaten that funding. If Ms. Gomez Frey had not lied to Collin College, she would not have been able to issue bogus performance discipline, without which my subsequent termination would not be sustainable.

Around the time she fired me, she also impermissibly promoted the same white co-worker who had assaulted me a year earlier. This white male co-worker was the only one that Ms. Gomez Frey approved for a particular training event. Then she cynically revised the promotional job description to require that particular training. In so doing, Ms. Frey blocked an experienced African American female business advisor from applying for that same promotion. On December 4, 2018, that black co-worker testified that one of the reasons she quit was because of Ms. Gomez Frey's referenced misconduct.

**Plaintiff was employed by Defendant from May 13, 2015 until October 11, 2018.**

The location where Plaintiff was employed or sought employment was:
**Collin College**
**Collin Small Business Development Center (SBDC)**
**Courtyard Center**
**4800 Preston Park Boulevard**
**Plano, TX 75093**

IV. EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

A. Plaintiff filed dual charges against Defendant with the Dallas District of the United States Equal Employment Opportunity Commission and the Texas Workforce Commission's Civil Rights Division on June 14, 2019

B. Respondent named on the charging document were served with the EEOC Charge, No. 450-2019-04969, in a timely fashion.  **A copy of the filed EEOC Charge is attached hereto. (Exhibit A)**  This Charge was based on my Color (African American), National Origin (Antigua and Barbuda), my disabilities, dyslexia and ADHD, and in opposition to pervasive retaliation against me by my immediate supervisor, other managers and "leadership" in the human resources department. As noted above, Respondent also violated my rights under the Family Medical Leave Act and the Rehabilitation Act and Defendant repeatedly delayed consideration of my request for reasonable accommodations. At the same time, my supervisor did not hold white male co-workers accountable for their repeated failure to spend a minimum number of hours each year working directly with prospective and actual clients of our Small Business Development Center.  And I was fired on a pretext when, in fact, my objective key accomplishments for the full year in question equaled or exceeded the accomplishments of the two white male co-workers who were rewarded for spying on my client records. Moreover, especially during the last year of employment at Collin College, my supervisor was chronically absent from the workplace.

V. RELIEF

Defendant should be directed to compensate me for lost back wages and other incidents of employment, such as offering re-employment and readjusting my dates of employment so that I may be eligible for certain pension benefits that have been denied to me.  I am also seeking compensatory damages for emotional distress resulting from discriminatory employment practices.  Plaintiff requests that Defendant be directed to re-employ Plaintiff. Plaintiff seeks costs and fees involved in litigating this case and such other relief as may be appropriate, including attorney's fees, if applicable if counsel is subsequently engaged.

## VI. CERTIFICATION

As required by Federal Rule of Civil Procedure 11, I certify by signing below that to the best of my knowledge, information, and belief, this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  November 4, 2021

Signature of Plaintiff:   Keith V. Otto  *(Digitally signed by Keith V. Otto, DN: cn=Keith V. Otto, o, ou, email=kvotto@gmail.com, c=US, Date: 2021.11.04 09:24:49 -05'00')*

Printed Name of Plaintiff:   Keith V. Otto

**James Sacher**
Attorney at Law

June 14, 2019

**RECEIVED**
JUN 14 2019
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
DALLAS DISTRICT

CRTIU Supervisor, U.S. Equal Employment Opportunity Commission, Dallas District Office, 207 S. Houston Street, Ste. 3rd floor, Dallas, Texas 75202

via hand delivery

**RECEIVED**
JUN 14 2019
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
DALLAS DISTRICT

Re: Letter of representation in Keith Otto v. Collin College,

Charge No. **450-2019-_____**

Dear Sir or Madam,

This letter informs the EEOC that James ("Jim") Sacher is my lawyer regarding my Charge and I have enclosed my signed Charge. When I submit the Intake Questionnaire, it will identify witnesses and other relevant evidence. If the Respondent is interested in utilizing the EEOC's **mediation** program, I will participate along with my counsel, Jim Sacher.

Also, if Respondent submits a position statement in response to my Charge, I hope the assigned investigator could send a copy of that Position Statement and the disclosable documents to Jim Sacher and me (unless we can access it at the public portal.)

This letterhead provides Jim Sacher's contact information but for ease of reference, Jim Sacher can be reached at jsacher997@gmail.com and at 713 398-3775. His mailing address is James Sacher, 5300 N. Braeswood Blvd, Suite 4, #5003, Houston, TX 77096. Thank you for your consideration.

Sincerely yours,

Keith Otto

Enclosure: Charge

cc: Attorney James Sacher

---

Admitted to practice law in Texas | phone 713 398-3775 | jsacher997@gmail.com

5300 N. Braeswood Blvd, Ste 4 #5003, Houston, TX 77096

EXHIBIT A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | 450-2019-04969 |

**Texas Workforce Commission Civil Rights Division** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Keith Otto | (214) 636-9996 | 9/10/1967 |

| Street Address | City, State and ZIP Code |
|---|---|
| 514 Wentworth Drive, | Richardson, Texas 75081 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Collin County Community College, McKinney, TX | Over 500 | (972) 758-3856 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3452 Spur 399, 3rd floor | McKinney, Texas 75069 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

RECEIVED JUN 14 2019 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION DALLAS DISTRICT

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN
[X] RETALIATION  [X] AGE  [X] DISABILITY  [X] OTHER (Specify below.)
**Retaliation, Harassment, Hostile Environment, and**

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 3/ /2016 | 12/ /2018 |

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am an African American male. I was born in Antigua and moved to the United States when I was 15 years old. On May 13, 2015, Collin County Community College (or "the College") hired me as a business advisor for its Collin Small Business Development Center ("Collin SBCD" or "Center"). My supervisor was the Center's manager, Ms. Marta Gomez Frey. Supervisor Gomez Frey arbitrarily disciplined me and later terminated me, relying heavily on her falsely claiming that my database entries violated standards mandated by our funding source: Collin SBCD ("the Center") is a subcontractor of the North Texas Small Business Development Center ("NTSBDC"), which provides most of the Center's funding from grants which it receives from the United States ("federal") and Texas state government. In late December, 2018, the College upheld Ms. Gomez Frey's termination of my employment.

Supervisor Gomez Frey created a hostile work environment against me and discriminated against me because of my race and disability. She frequently tasked her staff, my co-workers, to monitor my database entries and report any supposed shortcomings to her. She showed continual favoritism toward the white co-workers, sometimes transferring my clients to them, and not holding them to important standards. Amongst other things, Ms. Gomez Frey ordered those white co-workers to search my database in Neoserra to document any instances when I did not enter certain client data within five days of assisting those clients. Neither I nor the other black professional were ever tasked to monitor the white co-workers' databases. Moreover, she overlooked those white co-workers' failure to meet certain performance benchmarks which I routinely satisfied. And she manipulated the promotional requirements and then she preselected and promoted a white business advisor, passing over a subsequently hired very qualified black co-worker.

Supervisor Gomez Frey's office adjoined mine. Despite knowing about my disability, she undermined my productivity by frequently interrupting my work efforts. I tried to remedy this problem and sought appropriate work accommodations. But Ms. Gomez Frey unreasonably opposed my requests for reasonable accommodation and leave, including under the Family Medical Leave Act. After my emergency hospital admission for heart

problems, she was ordered to stand down in that effort to stop the processing of my FMLA application in February, 2018.

In late 2017, Ms. Frey tried to cover up a white male business advisor's threatening behavior toward me. All co-workers saw this co-worker screaming and cursing at me in an office meeting: then he jumped up, bolted from our meeting and left work for the day. His unprovoked misconduct was a clear violation of Collin SBCD standards which warranted his written discipline. Though it was clearly a reportable event, Ms. Gomez Frey tried to cover up his misconduct by not reporting it. Then she tried to undermine the subsequent investigation of his misconduct by the human resources (hr) generalist assigned to our unit. That hr generalist conducted an independent investigation by interviewing all unit members. Her investigation disclosed Ms. Frey's efforts to cover up the white co-worker's threatening behavior toward me. As a result, that white male co-worker was given step one written discipline over Ms. Frey's objections. But I doubt Ms. Gomez Frey was disciplined for her attempted cover-up.

In 'mid 2018, this same hr generalist discovered Ms. Gomez Frey had lied to her by claiming that the NTSBDC was requiring her to impose a timeliness standard on me concerning typing notes into the Neoserra database. Ms. Frey falsely claimed that those entries had to be made within five days of the actual client contact so she had to discipline me when I did not complete the entries in that time frame. Of course, she did not discipline my white male coworkers when they did not meet supposed mandatory requirements. None of my co-workers were spied on, or placed under this pressure by Ms. Frey. In fact, the NTSBDC leadership told the hr staffer in the Spring of 2018 that, in response to my ADA accommodation request, it was appropriate to permit me to enter details of client contact within five work days **in the month following** the month in which I had met with the agency client (the 5 day rule). Ms. Gomez Frey had perennially falsely claimed those entries had to be made within five days of the actual contact.

Shortly after this hr staffer reported Ms. Gomez Frey's misrepresentations, that staffer was abruptly involuntarily transferred to another campus. So despite how much she had learned about my mistreatment, she was removed from investigating human resources activities in my workplace, the Collin SBCD. The hr generalist who replaced her had no interest in assuring that I would be treated fairly by a supervisor who had been caught lying to the hr department and Collin College leadership in general. My last request for accommodation was made in 'mid March, 2018, immediately following my month long FMLA absence. But it was not approved until August, 2018 (and, even then, it fell short of my request.) I was never given that accommodation. **If I had timely obtained the accommodation, I would have met reasonable performance expectations; this, in turn, would have undermined Ms. Frey's excuse for firing me.** So her most recent obstruction of the ADA accommodation process effectively denied me the accommodation: she delayed my obtaining warranted accommodation for over six months and, then, when it was only approved in part, **she never permitted its implementation.** So when Ms. Gomez Frey recommended my firing in 'mid October, 2018, I had not received the requested accommodation for seven months. So I was not accommodated for more than half of the rating period because Ms. Frey thwarted me, but that did not stop Ms. Gomez Frey from imposing performance standards for a full year to "justify" the unacceptable rating she used to support my termination.

Ms. Gomez Frey imposed a hostile environment on me and fired me because of my disability, my race, African American, and my effort to fairly obtain accommodations. She illegally obstructed the accommodation process. She persistently lied to and manipulated the College's human resource professionals and Collin College management. Ultimately, she succeeded. Ms. Gomez Frey used her "cat's paws" to manipulate higher level Collin College management. I would still be an employee of the Collin SBCD if she had followed NTSBDC guidance. Her abuse could threaten that funding. If Ms. Frey had not lied to Collin College, she would not have been able to issue bogus performance discipline, without which my subsequent termination would not be sustainable. Around the time she fired me, she also impermissibly promoted the same white co-worker who had assaulted me a year earlier.

This white male co-worker was the only one that Ms. Gomez Frey approved for that particular training event. Then she cynically revised the promotional job description to require that particular training. In so doing, Ms. Frey blocked an experienced African American female business advisor from applying for that same promotion. On December 4, 2018, that black co-worker testified she quit because of Ms. Gomez Frey's referenced misconduct.



| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| 4/14/19         *Charging Party Signature* <br> Date | 6/14/19  K. Blake <br> SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) <br> KIMARIO O. BLAKE <br> Notary Public, State of Texas <br> Comm. Expires 01-23-2023 <br> Notary ID 131864534 |

EEOC Form 5 (5/01)

CP Enclosure with EEOC Form 5 (5/01)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (5/01).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII or the ADA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please notify EEOC or the state or local agency where you filed your charge **if retaliation is taken against you** or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.